FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## BESANG, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)

### PUBLIC VERSION

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 1

   A.  The Kiehlbauch Declaration Should Be Given No Evidentiary Weight. ............................ 1

   B.  Micron's Showing for the Private Interest Factors Does Not Clearly Demonstrate Good Cause for Transfer. .................................................................. 3

     i.  The Cost of Attendance for Willing Witnesses Is Higher in Boise. ................................. 3

     ii.  The Relative Ease of Access to Sources of Proof Is at Best Neutral. ............................. 7

     iii.  Compulsory Process is Available for the Vast Majority of Relevant Third Parties in this District. .................................................................. 10

   C.  The Public Interest Factors Do Not Support Transferring This Case ............................... 12

     i.  Local Interest Is Neutral ................................................................... 12

     ii.  Court Congestion Weighs Against Transfer .................................................. 13

   D.  The Court Should Not Reward Micron's Venue Gamesmanship. .................................... 13

III. CONCLUSION ................................................................................................... 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

*Distributed v. Bruck*
   30 F.4th 414 (5th Cir. 2022) ............................................................................. 1, 3

*Enovsys LLC v. T-Mobile USA, Inc.*
   No. 2:21-cv-368-JRG, 2022 WL 2161028 (E.D. Tex. June 14, 2022)...................................... 9

*Hertz Corp. v. Friend*
   559 U.S. 77 (2010) ............................................................................................. 15

*In re Apple Inc.*
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .................................................. 15

*In re Apple*
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................................ 12

*In re Google LLC*
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .................................................. 7

*In re Google*
   58 F.4th 1379 (Fed. Cir. 2023) ................................................................................ 13

*In re Planned Parenthood Fed'n of Am., Inc.*
   52 F.4th 625 (5th Cir. 2022) .............................................................................. 1, 10

*In re Samsung Elecs. Co., Ltd.*
   2 F.4th 1371 (Fed. Cir. 2021) ................................................................................ 15

*In re Toyota Motor Corp.*
   747 F.3d 1338 (Fed. Cir. 2014) .............................................................................. 6, 9

*In re Volkswagen AG*
   371 F.3d 201 (5th Cir. 2004) ................................................................................. 7

*In re Volkswagen of Am., Inc.*
   545 F.3d 304 (5th Cir. 2008) ................................................................................. 3

*In re Zimmer Holdings, Inc.*
   609 F.3d 1378 (Fed. Cir. 2010) .............................................................................. 15

*SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*
   No. 2:15-CV-00247-JRG-RSP, 2018 WL 6788033 (E.D. Tex. Dec. 26, 2018) ....................... 15

ii

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................... 15

35 U.S.C. § 271(a) ............................................................................................... 10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.       INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc. and Micron Technology Texas LLC (collectively, "Micron") invite this Court to transfer this case based entirely on a shoddy affidavit derived from an incomplete, results-oriented investigation. Yet Micron has a significant presence in this District—a presence which, contrary to Micron's arguments, is highly relevant to this dispute. Significant third-party witnesses—a large BeSang licensee, former Micron employees with knowledge of and prior communications with BeSang, Micron's many authorized distributors, BeSang's longtime advisory board member, key direct competitors like Samsung, and more—are subject to the Court's subpoena power here. As detailed below, when this full scope of relevant evidence is considered, not a single factor weighs in favor of transferring this case. At a minimum, Micron has failed to carry its burden of clearly establishing good cause to transfer. The Court should deny Micron's motion.

## II.      ARGUMENT

In the Fifth Circuit, the convenience-transfer question requires analysis of private and public factors (*Gilbert* factors) to evaluate whether the transferee venue is clearly more convenient.[1] *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). Micron "must adduce evidence and arguments that *clearly establish good cause* for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (emphasis added). Micron has failed to do so.

### A.   <u>The Kiehlbauch Declaration Should Be Given No Evidentiary Weight.</u>

Micron's motion is based almost entirely on a four-and-a-half page declaration of Mark Kiehlbauch. The Court should give this declaration no weight. While Dr. Kiehlbauch purports

---

[1] The parties dispute all but two of the factors here, agreeing that the fourth private interest factor (practical problems) and fourth public interest factor (conflict of laws) are both neutral.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to describe the lack of *any* "relevant" documents and witnesses in Texas, he later admitted he

does not know what is relevant to this case or not:

> Q. So you don't have an understanding of what is and what is not
> relevant to the varied issues in this litigation, correct?
> A. I do not.

Ex. A (Kiehlbauch Dep.) at 20:25–21:3.[2]  The sweeping statements in Dr. Kiehlbauch's

declaration about the absence or presence of "relevant" witnesses and proof cannot be accepted

as true where Dr. Kiehlbauch confessed complete ignorance about this case.

Further, the assertion that Dr. Kiehlbauch performed an "investigation of the relevant

information" did not fare well under cross-examination.  *See* Dkt. 32-1 (Kiehlbauch Decl.) ¶ 1.

For instance, Dr. Kiehlbauch purported to investigate and identify six witnesses "who are

'**primarily responsible**' for the research, design, and development of the accused products," *id.*

¶ 13, only then to acknowledge he was actually asked to identify only a list of people *he* "**knew**

that were involved in 3D NAND development." *See* Kiehlbauch Dep. at 147:6–9 (emphasis

added).  Dr. Kiehlbauch claimed that "there are no documents relevant to this action at the

Austin, Texas site." Kiehlbauch Decl. ¶ 17.  Yet Dr. Kiehlbauch then acknowledged he did not

actually know what documents were kept at the site he was purportedly declaring about. *See*

Kiehlbauch Dep. at 116:25–117:5 ("I wouldn't possibly know all the documents they have in the

Austin facility."); *id.* at 100:13–17 ("I don't know what data they keep and maintain.").  Worse,

when someone who *does* know, the Austin site leader Mr. Larry Hart, offered to speak to Dr.

Kiehlbauch over the phone to educate him, his offers went ignored.  Ex. B.  Dr. Kiehlbauch's

investigation "of the relevant information" also, somehow, failed to uncover that the Accused

---

[2] *See also id.* at 116:13–15 ("I don't know if sales and marketing data are relevant to this case.");
*id.* at 139:24–140:1 ("I can't speak to relevance [of financial information to this case]."); *id.* at
18:20–19:14 (testifying that he has not read any case documents).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Products in this case contain Allen, Texas-based DRAM components.  *See* Ex. D (depicting the Micron 7450 NVMe SSD containing a component labeled "Micron DRAM"); Kiehlbauch Dep. at 54:17–20 ("Q. Would it surprise you that the majority of the accused products listed here include DRAM designed and manufactured by Micron? A. I did not know that.")  In fact, prior to his deposition, Dr. Kiehlbauch was of the belief that no accused products contained DRAM.  *See* Kiehlbauch Dep. 50:13–51:1.  The statements in Dr. Kiehlbauch's declaration regarding the purported absence of people and proof in Allen appear to be the result of this error.  But it was an avoidable one: if he had not ignored Mr. Hart's offers to speak, Dr. Kiehlbauch may not have submitted inaccurate attestations.  *See* Ex. C (Hart Dep.) at 29:16–25, 52:10–24 (testifying about the DRAM in SSDs).  At a minimum, Dr. Kiehlbauch could have also simply reviewed BeSang's infringement contentions. Mot. Ex. 1 at 7, 10, 13 (depicting Micron DRAM in accused products).

Given these flaws, the Court can and should disregard this evidence.  *See Def. Distributed*, 30 F.4th at 434 (holding that the district court "erred by uncritically accepting the NJAG's conclusory assertions" regarding sources of proof and that the assertions "lack that necessary proof, while the Plaintiffs identified proof, documents, and witnesses that are located in Texas and support maintaining Texas as the forum").  And given that Micron has the burden of proof and how Micron relied almost exclusively on this declaration to meet its burden, giving no weight to the declaration is, by itself, sufficient grounds to deny Micron's motion.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (concluding that plaintiff's venue choice should be respected when defendant fails to meet its burden).

**B.  Micron's Showing for the Private Interest Factors Does Not Clearly Demonstrate Good Cause for Transfer.**

**i.  The Cost of Attendance for Willing Witnesses Is Higher in Boise.**

XFILEDXUNDERXSEALXPURSUANTXTOXPROTECTIVEXORDERX

BeSang has identified 36 different Micron employees in the District with knowledge relevant to this case.  This is a conservative estimate, as there are more than 160 total employees at the Allen facility.  At least seven employees who work for Micron in this District have information specifically related to 3D NAND, NAND, and SSD technologies based on current or prior work experience at Micron.  McCarty Decl. ¶ 6.  Those witnesses include the company's



, and the

. *See id.* ¶¶ 7, 13.  While Dr. Kiehlbauch averred that "no relevant witness having knowledge of Micron's NAND-related activities resides in Texas," Decl. ¶ 12, he later disavowed his declaration when confronted with these and other local witnesses.  *See* Kiehlbauch Dep. at 84:15–86:7; *id.* at 90:17–93:20.  Additional witnesses with relevant NAND and SSD information based on current or prior work include

*See* McCarty Decl. ¶ 6; Ex. E.  There are also more than 20 Allen-based witnesses who work with DRAM component (such as DDR4 and/or LPDDR) aspects of the Accused Products.[3]  Dr. Kiehlbauch apparently discounted these witnesses because he believed the accused products contained no DRAM.  *See* Kiehlbauch Dep. 50:13–54:20  As explained above, this is incorrect.[4]

---

[3] These include:

McCarty Decl. ¶ 14; Ex. F.

[4] The DRAM generally serves as a cache for writing data to the drive and for storing the mapping tables.  Discovery related to how the 3D NAND interfaces with DRAM can provide meaningful context to understand the technical role and the economic footprint that 3D NAND components have in the accused SSD products.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Other witnesses in this District have knowledge of 3D XPoint (3DXP).  3DXP has already emerged as a potential noninfringing alternative.  3DXP SSDs, such as Micron's X100, were billed as alternatives to the accused products with faster read/write speeds.  *See* Exs. G, H. Micron eventually abandoned the alternative.  *See* Kiehlbauch Dep. 156:15–18.  Micron's Allen location focused on 3DXP before it was abandoned.  *See* Ex. I.  BeSang's investigation has already identified many 3DXP engineers in Micron's Allen site—███████████████████ ██████████████████—with information relevant to 3DXP.  *See* McCarty Decl. ¶ 47.

Despite these easily identifiable witnesses, Micron insists that it is "not aware of . . . any potential witnesses residing in the EDTX for whom proceedings would be more convenient if a trial was held here."  Mot. at 5.  It seems that Micron was unaware purely because it did not look.

Further, the six Idaho-based witnesses that Micron touts are also of dubious relevance. As discussed, Dr. Kiehlbauch purported to identify Micron engineers "who are primarily responsible for the research, design, and development of the accused products."  Kiehlbauch Decl. ¶ 13.  But Dr. Kiehlbauch later clarified that he did nothing to investigate who was "primarily responsible" for reaching, designing, and developing the accused products; rather, he provided a list of people he already knew "in 3D NAND development."  *See* Kiehlbauch Dep. at 147:6–9 ("I was asked to *provide a list of people I knew* that were involved in 3D NAND development."(emphasis added)).  Since Dr. Kiehlbauch's role at Micron involves process and manufacturing equipment for both NAND and DRAM chips, not circuitry design, *see id*. at 31:21–32:1, it is not surprising he identified individuals with similar roles.[5]  The patent-in-suit,

---

[5]  *See, e.g.*, *id*. at  148:16–149:15  (explaining ██████ ████████████); *id*. at 151:18–155:8 (explaining ███████)*; id.* at 155:9–156:9 (explaining ███████)*; id.* at 157:2–20 (explaining ████████████████████████).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

however, is not about process methods for manufacturing the DRAM and NAND memory. Rather, the patent discloses circuitry designs and claims those structures in the context of the transition from 2D to 3D NAND, DRAM, and SRAM.  *See* Dkt. 1-1, U.S. Patent No. 7,378,702 (the "'702 Patent") (titled "Vertical memory device structures"); *id.* at 10:47–12:52.  Dr. Kiehlbauch acknowledged "***none*** of [the witnesses he identified] worked on the circuit design during the transition from 2D to 3D NAND."  Kiehlbauch Dep. at 183:15–17 (emphasis added).

To the extent the Court evaluates Austin-based information in its analysis,[6] Micron's evidence and arguments are also suspect.  Once again, despite having sworn that "no relevant witness having knowledge of Micron's NAND-related activities resides in Texas," Decl. ¶ 12, Dr. Kiehlbauch was forced to concede otherwise when confronted with evidence of the many relevant Austin-based Micron witnesses, such as the ███████████████████████ ███████████████████████.  *See* Kiehlbauch Dep. at 117:10–25; McCarty Decl. ¶ 54.  Just as there are many willing witnesses in Allen, there are dozens of willing witnesses with relevant information about Micron's accused NAND products in Austin, too.[7]

---

[6] The Federal Circuit has commented that "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums," *see In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).  To the extent Micron argues this statement means that sources of proof outside the transferor and transferee district are irrelevant, Micron's arguments concerning the distance from California or Oregon to Boise are likewise irrelevant.  *See* Mot. at 6, 10.  To the extent Micron believes that distance for sources of proof close but not actually in the forum are relevant, these Austin-based Micron contacts are relevant sources of proof far closer to this District than Idaho.

[7] McCarty Decl. ¶ 52. For example, ███████████████████████████████████ ██████████████████████████████████████████████████████████████████ *Id.* ¶ 53; Ex. CC. ████████████████████ McCarty Decl. ¶ 53.  The list goes on: ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ are all Austin-based Micron employees with knowledge relevant to this case and the accused

XFIXKEDXUNXDERXSEAXLXPXRXSXUXAXNXTXTOXPRXOXTEXCTXIVXEXORXDEXRX

And, for those witnesses, attending trial in Marshall is clearly more cost-effective.  Austin is less than 300 miles from Marshall—a distance that can easily be traversed by car.  *See* Ex. AA. Meanwhile, there are no direct flights between Austin and Boise apart from one seasonal flight that was recently discontinued, Ex. BB, and this adds complexity to the task of traveling the over 1,600 miles between the cities.  Additional distance (here, ~1300 extra miles) "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004).  The Federal Circuit has focused on time over distance. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).  The travel time imposed on Austin witnesses forced to queue at multiple airports, navigate uncertain flight schedules, and stay at hotels far exceeds the time it would take to drive to Marshall.  It might even be possible for some witnesses to make it back from Marshall same-day to sleep in their Austin-area homes.

### ii.   The Relative Ease of Access to Sources of Proof Is at Best Neutral.

Micron's Allen campus in the District has volumes of relevant evidence, including technical documentation regarding the accused products, ████████████████████████ ████████████ and it is a likely source for critical pre-suit knowledge evidence.

As to technical documentation, ████████████████████████████████ █████, that are included in the accused products and creates documents regarding that memory work.  *See* Ex. X (Chen Dep.) at 15:3–16:8; *id.* at 24:11–25:2.  Many of these employees currently work, or previously worked, on the NAND aspects of the accused products as well and

---

products, with knowledge about the design, development, marketing, testing, optimization, and value of the accused products.  *Id.* ¶¶ 55–79; *see also* Ex. K.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

almost certainly have documents related to the accused products.  Even Dr. Kiehlbauch

recognized that employees "presumably" have documents on their computer about their work.

Kiehlbauch Dep. 82:2–11.  Besides employee computers, there is also robust ███████

████████████████████████████████████████.  *See* Ex. L.

████████████████████████████████████████████████████

██████████████████████.  By virtue of its employees working on these technologies, *supra*

§ II.B.1, ████████████████████████████████████████

████████████████████████████████████████████████████

██████      *See* Hart Dep. at 61:19–23 (testifying how accused product performance is impacted by

"the work of the DRAM").

     Further, BeSang's pre-suit interactions with Micron concerned Micron's DRAM memory,

*see* Ex. M at 9.  Pre-suit correspondence involving individuals from BeSang and Micron's Allen

facility evidence this.  *See* Exs. N, O ("████████████████████████████████████

████████████████")  The Allen facility's DRAM groups are believed to possess unique

evidence such as communications, presentations, designs, and other evidence concerning

BeSang, BeSang's patents, and communications involving BeSang representatives.  Even recent

public presentations from Micron regarding its DRAM memory cite BeSang.  *See* Ex. P at 5.

This information specific to the DRAM aspect of the accused products is relevant for many

reasons, including to show Micron's pre-suit knowledge of BeSang and its patents, as well as the

parties' pre-suit conduct and commercial interactions.

     Despite this volume of District-based evidence, Micron asserts "no relevant sources of

proof are located in this District, or even in Texas" and that "none of Micron's Texas-based

personnel worked on the research, design, development, or manufacturing of the accused

X̶F̶I̶L̶E̶D̶ X̶U̶N̶D̶E̶R̶ X̶S̶E̶A̶L̶ X̶P̶U̶R̶S̶U̶A̶N̶T̶ X̶T̶O̶ X̶P̶R̶O̶T̶E̶C̶T̶I̶V̶E̶ X̶O̶R̶D̶E̶R̶X

products." Mot. at 9, 10.  But once again, Micron points to Dr. Kiehlbauch as support for this statement—a witness who admitted to having no concept of relevance and who made virtually no effort to learn anything about this case or the Texas facilities.  *See supra* § II.A.[8]  And in evaluating the relative weight between sources of proof in this District and those in Boise, Micron's investigation was half-hearted: Micron's 30(b)(6) witness could not identify the location for much of the company's documents.[9]  At best, ████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See* Kiehlbauch Depo. at 135:4–139:17 ("I don't know where they're kept."); *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-368-JRG, 2022 WL 2161028, at \*3 n.4 (E.D. Tex. June 14, 2022) (finding the sources of proof factor does not support transfer where electronic documents are not all electronically stored in Bellevue but are on "cloud server located at an unknown location").

Micron also seeks to credit evidence outside of the District (but closer in proximity) to Idaho in its favor.  But, as noted above, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and *documents* in places outside both forums." *Toyota*, 747 F.3d at 1340 (emphasis added).  If the Court discredits the significant Austin-based evidence, it must do the same for the California and Oregon-based evidence as well.  If the Court credits material out of either forum, the Austin-based sources of proof surrounding its testing, marketing, pricing, and sale of the accused products are at least as

---

[8] Dr. Kiehlbauch could also not identify the types of documents created by individuals in Allen involving the DRAM in the accused products, whether there are any physical samples in Allen, or whether the Allen facility has test documents, product specifications, or verification documentation for the accused products.  *See* Kiehlbauch Dep. at 96:9–12, 96:13–17, 98:16–22.

[9] For instance, ███████████████████████████████████████████████████████████████████████████████████████████████████.
*See* Kiehlbauch Dep. at 135:4–139:17.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

compelling.[10]  Focusing on just the "SSD Lab" testing there, despite Micron's contrary claims,

this testing is highly relevant; 

[11]  This testing

would also constitute an infringing use in violation of 35 U.S.C. § 271(a).

At bottom, there are documents in both districts here, and this factor is at best neutral.

And in any event, since most material will be electronic, this factor is accorded less weight.[12]

*Planned Parenthood*, 52 F.4th at 630.

### iii.  Compulsory Process is Available for the Vast Majority of Relevant Third Parties in this District.

Compulsory process weighs against transfer.  Numerous corporate entities are subject to

subpoena power in this District as opposed to the proposed transferee venue.  In 2013, BeSang

---

[10] *See, e.g.*, Hart Dep. at 18:18–22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.* at 33:2–3 ("[R]esponsible for helping negotiate pricing with customers"); *id.* at 39:22–23 ▮▮▮▮▮▮▮▮"); *id.* at 51:10–12 ("Generally the testing that I'm involved in is related to the SSDs for the storage side of that."); *id.* at 51:17–52:3 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.* at 69:1–7 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

[11] *See* Ex. Q; *see also* Kiehlbauch Dep. at 133:3–8 (Q. So in this document, Micron is explaining that the solid state drive product has an improved write speed due to the physical architecture of the 3D NAND chip, correct? A. Yes, that is one factor in the SSD rate speeds. . . .").  Products containing "Micron's 232-layer NAND" are accused products in this case. *See* Dkt. 1 ¶ 41.  This benefit—which Micron advertises as flowing from its use of (BeSang's) vertical memory technology—is directly relevant to this case.

[12] To bolster the importance of this factor, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮—having Dr. Kiehlbauch warrant with no detail whatsoever that samples for "certain of the accused products" are located there.  Kiehlbauch Decl. ¶ 10.  Of course, Dr. Kiehlbauch has never been to the Allen facility and declined to educate himself about any physical samples that are located there.  Kiehlbauch Dep. at 82:21–22, 96:13–97:6.  Regardless, Micron has failed to explain how these "samples" differ from the accused products themselves, which *are* available in the Eastern District just as they are in Idaho.

entered into technology license with SK hynix, *see* Ex. N, but SK hynix has locations here, not Boise.  Ex. R.  That agreement is certain to be analyzed by the parties with respect to damages. Also located within the district is Samsung Electronics, which has information regarding its noninfringing alternative and BeSang product development efforts.  McCarty Decl. ¶¶ 101–02.

Micron also has twelve authorized distributors, Ex. DD, that it induces to commit direct infringement.  ██████████████████████████████████████ ████████████████████████████████████ Ex. S at 1, and the distributors have relevant information about direct infringement, inducement, and damages.  At least five of these distributors have facilities in Texas.  For example, AvNet is located in the District, and Mouser is headquartered in Mansfield.  Exs. S, EE.  Not one appears to be in Idaho. Transfer there would limit BeSang's ability to bring distributors to trial.  Testimony from these distributors may be needed to meet BeSang's inducement burden of proof.

A host of relevant witnesses can also be compelled to attend trial here but not in Boise. For example, third-parties ██████████████████, both former Micron employees, reside in the District.  Exs. T, U. ██████████████████████████, Ex. T, ████████ ████████████████████████████████████████████████████ ████████████████████████████ *See* Exs. N, O.  Within the state, former Micron employees ██████████████████████████████ each have information regarding Micron's flash technologies at issue in this case, including 3D NAND. McCarty Decl. ¶ 103.  Additionally, a member of BeSang's advisory board, Dr. Sanjay Banerjee, is currently a Professor of Electrical and Computer Engineering at the University of Texas at Austin and has relevant information about BeSang's technology.  Ex. Z.

Each of the above witnesses are subject to subpoena power for trial in this District but not

███FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER███

in Boise.[13]  Meanwhile, Micron claims that there is just one third-party in Idaho, ██████ subject to subpoena power in Boise.  *See* Mot. at 11.  Given the number of relevant witnesses that are subject to the subpoena power of this Court and would be outside of the subpoena power of the District of Idaho, this factor weighs strongly against transfer.

### C.  The Public Interest Factors Do Not Support Transferring This Case

The public interest factors also do not support Micron's transfer request.

#### i.    Local Interest Is Neutral

Micron contends that its Boise-based U.S. headquarters means this factor weighs in favor of transfer.  But Micron's U.S.-headquarters is far from dispositive.  The local interest factor is to account for the connections between a venue and "the events that gave rise to a suit."  *In re Apple*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).  The events that gave rise to this suit are Micron's unauthorized selling of infringing products.  And this is not a case where "some allegedly infringing products found their way into the Texas market."  Mot. at 14.  Instead, Micron is using this District in distribution: its authorized distributors, like AvNet, which it requires to ██████████████████, is located in this District.  Further, while Micron does have a substantial presence in Boise, it cannot show that Boise is exclusively where "research, design, development, and testing of the accused products took place."  Not one of the six witnesses identified by Micron worked on the circuit design at issue.  The record also shows that there are Allen employees who have worked on various portions of the accused products, along with substantial NAND flash research, design, and development activities in California and Asia.

Because Micron has not carried its burden to establish that Boise is connected to its

---

[13] Attending trial would not present substantial expense for these witnesses.  *See supra* at 7.  In any event, BeSang would be willing to reimburse expenses for such witnesses, alleviating this concern.  *See* Committee Notes on Rules – 2013 Amendment (when travel over 100 miles "could impose substantial expense," "the party that served the subpoena may pay that expense").

decision to implement BeSang's technology into Micron's circuit design, this factor is neutral.

### ii. Court Congestion Weighs Against Transfer

Court congestion weighs against transfer. The parties are likely to suffer lengthy delays in Idaho: The median time-to-trial from filing of civil cases in the District of Idaho is 35.7 months but only 16.7 months in this District. Ex. V.

Micron argues that the court-congestion factor is neutral because BeSang is not engaged in product competition. Mot. at 14. Micron is wrong. To be sure, some recent Federal Circuit authority indicates that this factor should not be given weight where it is "*undisputed* that [the Plaintiff] . . . is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency . . . ." *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). But here, BeSang is engaged in the market and there is urgency to this case. BeSang is a product design company, actively participating in the market—it markets its memory design services, actively seeking clients and product partnerships. *See, e.g.*, Ex. II (███████████████████████████████████████████████████████████

████). Most recently, BeSang has been developing related 3D NOR design and products. *See* Ex. GG ("We are preparing for our own 3D NOR design and products.").

### D. <u>The Court Should Not Reward Micron's Venue Gamesmanship.</u>

As is hopefully clear from review of the evidence in this opposition, Micron's motion does not appear to be based on a diligent, good-faith investigation of facts. Instead, it appears that Micron is attempting to have its motion to transfer granted based on an inaccurate record. Specifically, Micron put Dr. Kiehlbauch's broad attestations to use as its keystone evidence for its motion, but this declaration is not credible. In fact, it is not even clear who wrote it. Kiehlbauch Dep. at 114:16–18 ("Q. Who wrote it? . . . A. I don't know specifically who wrote it."). The author, whoever that is, had Dr. Kiehlbauch sign sweeping statements that hinged on

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

"relevance" —*e.g.*, there is allegedly "no relevant witness having knowledge of Micron's NAND-related activities resides in Texas" (Kiehlbauch Decl. ¶ 12)—that crumbled under basic scrutiny.  As Dr. Kiehlbauch confirmed that he has no concept of what is relevant to this case, he could not substantiate or defend the statements in the declaration bearing his name.

Moreover, counsel for Micron had Dr. Kiehlbauch sign these sweeping statements when even a cursory investigation disproved them.  As noted above, Dr. Kiehlbauch was unaware of DRAM's relevance to the accused products.  Dr. Kiehlbauch first learned *in his deposition* that DRAM memory was in the accused products.  This ignorance of basic components of the technology also casts doubt on Micron's characterization of Dr. Kiehlbauch as someone "primarily responsible for the research, design, and development of the accused products."  *See* Mot. at 6.  The fact that he could not even say where the accused products are manufactured only raises further doubt.  *See* Kiehlbauch Dep. at 33:18–21 (Q: You do not know where the accused products are manufactured, correct? A. Correct.").

Nor did Dr. Kiehlbauch consider the many Allen-based employees with 3D NAND information and experience at the company, or look into the relevance of Austin-based sources of proof.  Rather, he attested to "know[ing]" facts that are simply not true, such as his unsupported claim that Micron does not "sell the accused 3D NAND products" in Austin.  Kiehlbauch Decl. ¶ 14.  The Micron Austin site leader testified that the opposite was true.[14]

And hoping to seize on recent case law suggesting that restricted-access provisions unique to the transferee district could support transfer, *e.g.*, *In re Apple Inc.*, No. 2022-128, 2022



[14] *See, e.g.*, Hart Dep. at 18:18–22 ▮▮▮▮▮▮▮▮▮▮▮▮ ; *id.* at 69:19–24 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ); *id.* at 69:1-7 ( "▮▮▮▮▮▮▮▮▮▮▮▮ ").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022), Micron even misrepresented that a similar restriction existed in this case for its "Design Files," only to retreat when Micron's employees failed to back up that expedient litigation position.  Micron went so far as to have this Court enter an initial Protective Order based on this misrepresentation.[15]  After BeSang secured testimony proving it to be untrue, it promptly sought and received relief from the Court.  Dkt. 64.

The Court should not reward such conduct by granting Micron's requested transfer. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (urging courts to ensure that the purposes of jurisdictional laws are not frustrated by a party's attempts at manipulation); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (extending *Hertz* to venue manipulation); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377–78 (Fed. Cir. 2021) ("We have similarly rejected parties' attempts to manipulate venue."); *see also SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, No. 2:15-CV-00247-JRG-RSP, 2018 WL 6788033, at *5 (E.D. Tex. Dec. 26, 2018) (holding submission of false declaration in 1404(a) practice sanctionable).  In any event, given the lack of adequate investigation into the case, Micron cannot meet and has not met its burden of ***clearly*** establishing good cause for transfer—particularly given all the contradictory evidence Micron simply ignored.  The Court should deny Micron's motion.

## III.    CONCLUSION

Not a single factor weighs in favor of transferring this case.  Micron has failed to establish that the District of Idaho is clearly more convenient, and its motion should be denied.

---

[15] Micron represented to BeSang that ███████████████████████████████████████████ ███████████████ Ex. W at 16. ████████████████████████████████████████████████████ ████████████████████████████████████████████████. Chen Dep. at 58:4–16.  BeSang was forced to address this contradiction by letter.  Ex. Y. ████████████████████████████████ ███████████████████████████████████████████ Dkt. 64.  Had ████████ not been deposed, this may never have come to light.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

DATED: August 22, 2023

Respectfully submitted,

*/s/ Warren J. McCarty, III*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Aisha Mahmood Haley (admitted *pro hac vice*)
District of Columbia Bar No. 1034110
ahaley@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
**Caldwell Cassady & Curry P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

16

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of

record via electronic mail on August 22, 2023.

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order submitted in this case.

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III