IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC, <br><br> *Defendants.* | Case No. 2:23-cv-00028-JRG-RSP |

### **MEMORANDUM ORDER**

Before the Court is the Motion to Transfer Venue to the District of Idaho Pursuant to 28 U.S.C. § 1404(a) filed by Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC. **Dkt. No. 30**. For the reasons discussed below, the Motion is **DENIED**.

  **I. BACKGROUND**

On January 23, 2023, Plaintiff BeSang, Inc. filed the instant suit. Dkt. No. 1. Plaintiff alleges that Micron infringes U.S. Pat. No. 7,378,702. *Id.* at 4. Defendants filed the instant Motion to Transfer on May 31, 2023. Dkt. No. 30. In the Motion, Defendants request that the Court transfer this case to the District of Idaho. *Id.* at 1. One day later, on June 1, 2023, Defendants filed a motion to stay the case. Both motions proceeded with briefing and on December 15, 2023, the Parties jointly moved for a stay of the case pending resolution of two *inter partes* reviews pending before the Patent Trial and Appeal Board. Dkt. No. 93. The Court granted this Motion on December 20, 2023. Dkt. No. 95.

On November 13, 2024 and December 11, 2024 respectively, the PTAB issued final written decisions on the IPRs, which held that none of the claims at issue were unpatentable. IPR2023-00900; IPR2023-00991.

After a February 20, 2025, scheduling conference before the undersigned, the parties filed a joint motion to enter a docket control order, with the only disagreement being a 6-day difference in the proposed pretrial conference. The Court issued a new Docket Control Order for this case on March 10, 2025, setting the Claim Construction hearing for July 22, 2025. Dkt. No. 102.

Briefing on the instant Motion to Transfer is complete.

## II.  LEGAL STANDARD

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202-03 (5th Cir. 2004) ("*Volkswagen I*"). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Id.* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer. *See Volkswagen II*, 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

Regarding the propriety of venue specifically, the Judicial Code provides that 28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands*

2

*LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)). Pursuant to 28 U.S.C. § 1400(b), venue lies "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Three elements must be met in order to establish that a defendant has a regular and established place of business in the district: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re: Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in *Volkswagen I*. The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

In reversing a district court's grant of a transfer motion, the Fifth Circuit recently emphasized that "it is the movant's burden—and the movant's alone—to adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *In re*

*Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). "[S]howing "good cause" requires the movant to "clearly demonstrate" that its chosen venue is "clearly more convenient." *Id.* (internal citations and quotations omitted). That standard is not met if the movant merely shows that the transferee venue is more likely than not to be more convenient. *Id.* (internal citations and quotations omitted). Likewise, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. *Id.* (internal citations and quotations omitted). "[T]o establish good cause, a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* (emphasis in original).

In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

### III.    ANALYSIS

A motion to transfer under 1404(a) carries a high burden. *See generally In re Clarke*, *supra*. Here, Micron has failed to meet that burden.

#### A.    Propriety of the Transferee Forum

The parties do not dispute, and the Court agrees, that this case could have been brought in Idaho. *See* Dkt. No. 30 at 4; *compare* Dkt. No. 65.

4

### B. Balancing the Private and Public Factors

The Fifth Circuit directs the Court to avoid a mere tallying of the factors in resolving this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."); *see also SQIP, LLC v. Cambria Co., LLC*, No. 4:23-CV-202-SDJ, 2024 WL 1346498, at *2 (E.D. Tex. Mar. 29, 2024) ("[C]ourts are not to merely tally the factors on each side."). To that end, the Court considers not only each factor's outcome but also its weight to determine whether the actual convenience of the proposed transferee forum is "clearly more convenient" than that of this district. *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th at 508).

#### i. Private Interest Factors

##### a. Cost of Attendance for Willing Witnesses

The first private factor is the cost of attendance for willing witnesses, which has been described as the most important factor to weigh. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Courts properly give more weight to the convenience of non-party witnesses than to party witnesses. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012). The Fifth Circuit uses what is known as the "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *In re Genentech*, 566 F.3d at 1343; *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020). However, courts do not just consider how long and far a witness must travel—courts also may consider costs such as "meal and lodging expenses; and absence

from work, family, and community." *In re Clarke*, 94 F.4th at 514 n.20 (citing *In re TikTok*, 85 F.4th 352, 361 (5th Cir. 2023)). This factor "attempts to internalize and minimize those costs by favoring the venue that is more convenient from the perspective of willing witnesses." *Id.* at 514.

For this factor, Micron identifies Mark Kiehlbauch, Mallesh Rajashekharaiah, Lars Heineck[1], Richard Hill, Allen Mcteer, Kunal Shrotri, and Mike Bernhardt as the engineers primarily responsible for the research, design, and development of the accused products, and that they are all working and based in Boise, Idaho. Dkt. No. 30 at 5-6 (citing Dkt. No. 32-1 at ¶ 13 (hereinafter "Kiehlbuach Declaration")). Micron contends that it will be more convenient for these witnesses to testify at trial in Idaho than this District because the former is only about 30 minutes away from their location of work, while the latter is over 5 hours away and would involve flight travel. *Id.* at 6. Micron further argues that Idaho would be more convenient for: (1) unidentified "Micron witnesses in California"; (2) BeSang's Dr. Lee who is located in Oregon; and (3) several Silicon Valley-based prior art witnesses. *Id.* at 6-7.

BeSang responds, first arguing that as a preliminary matter, Mr. Kiehlbauch's declaration, on which Micron relies extensively, should be given no evidentiary weight due to a variety of flaws as shown chiefly through BeSang's later deposition of Mr. Kiehlbauch in which he is said to have contradicted himself on a host of issues. Dkt. No. 65 at 1-3. The Court will take up relevant arguments related to this on an issue-by-issue basis.

BeSang then identifies numerous witnesses at Micron's Allen, TX facility[2] who it contends have knowledge relevant to the issues in this case. Dkt. No. 65 at 4.

---

[1] Micron has represented that Mr. Heineck has left employment with Micron and, therefore, is now a third-party witness. Dkt. No. 103 at 1. This is of no moment; a motion to transfer under 1404(a) is assessed as of the date the complaint was filed. *Longhorn HD LLC. v. Juniper Networks, Inc.*, No. 2:21-CV-00099-JRG, 2021 WL 4243382, at *2 (E.D. Tex. Sept. 16, 2021).

[2] Micron has represented that its Allen, TX facility has relocated to Richardson, TX. Dkt. No. 103 at 1. Again, this is of no moment; a motion to transfer under 1404(a) is assessed as of the date the complaint was filed. *Longhorn HD LLC. v. Juniper Networks, Inc.*, No. 2:21-CV-00099-JRG, 2021 WL 4243382, at *2 (E.D. Tex. Sept. 16, 2021).

Micron retorts that none of these witnesses have knowledge relevant to this case because no research, design, development, manufacturing, testing, or sales of the accused products occurs at the Allen facility. Dkt. No. 30 at 7 (citing Kiehlbauch Declaration at ¶¶ 7, 9, 12, 14-17)).

BeSang argues, in turn, that the Allen witnesses do have relevant information "specifically related to 3D NAND, NAND, and SSD technologies based on current or prior work experience at Micron." Dkt. No. 65 at 4 (citing Dkt. No. 65-6). As an example, BeSang points to "[Micron's] Design Verification Engineer who developed platforms to characterize Micron's 3D NAND (Mr. Tan), and the former Design manager of Micron's next generation 3D NAND Flash (Mr. Chen)." *Id.* (citing Dkt. No. 65-1 at ¶¶ 7, 13) (emphasis omitted).[3] Circling back to their argument about how Mr. Kiehlbauch's declaration should not be given any weight, Plaintiff further argues that "[w]hile Dr. Kiehlbauch averred that 'no relevant witness having knowledge of Micron's NAND-related activities resides in Texas,'" he later contradicted his declaration "when confronted with these and other local witnesses." *Id.* (quoting Kiehlbauch Declaration at ¶ 12; citing Dkt. No. 65-2 at 84:15–86:7, 90:17–93:20).

Having reviewed the relevant portions of Mr. Kiehlbauch's deposition, the Court finds that Plaintiff has made a credible showing that there are witnesses in this District with relevant information at Micron's Allen, TX facility. While Micron clearly disagrees with this (*See* Dkt. No. 30 at 7-8), we resolve factual disputes in favor of the non-movant. *See Vocalife*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2. Accordingly, the Court finds that there likely are witnesses with relevant information at Micron's Allen, TX facility. BeSang further argues that there are also witnesses with relevant knowledge related to DRAM at the Allen location, including Aaron Bokmeyer, Arun Lokanathan, Bharat Patel, Brian Huber, David Brown,

---

[3] Plaintiff further points to Kingle Wang, Robyn Gilliam, Trikshita Rao, Shez Virani, Venkatesh Sanivarapu as relevant witnesses in this regard. Dkt. No. 65-6.

David Wilmoth, Eric Noe, Evan Zhang, Jakob Valdez, Jeremy Gum, Joo-Sang Lee, Jung Ham, Kallol Mazumder, Li-Chia (Arisa) W., Lloyd Lee, Manvitha Gundebommu, Nate Eckel, Praneeth Namala, Raghu Sreeramaneni, Sruthi Rangarajan, Thanh Mai, Brynan Qiu, Kevin Platt, Manoj Vijay, Matthew Monroe, Matthew Young, Myung Ho Bae, Will Ralston Scott, and Yufu Wang.[4] Dkt. No. 65 at 4, n.3 (citing Dkt. No. 65-1 at ¶ 14; Dkt. No. 65-7).

Micron again argues that none of these witnesses have knowledge relevant to this case because their knowledge is concerned with DRAM, which is not an accused component. Dkt. No. 67 at 1.

BeSang argues, in turn, that their knowledge of DRAM—despite DRAM not being a directly accused component—is still relevant because "[t]he DRAM generally serves as a cache for writing data to the drive and for storing the mapping tables. Discovery related to how the 3D NAND interfaces with DRAM can provide meaningful context to understand the technical role and the economic footprint that 3D NAND components have in the accused SSD products." Dkt. No. 65 at 4, n.4.

The Court finds that Plaintiff has once again made a credible showing on the relevance of DRAM and, therefore, that the Allen, TX witnesses with knowledge of DRAM are relevant to the motion. As before, we resolve this factual dispute, for purposes of this motion, in favor of non-movant BeSang.

With these issues resolved, we now analyze the relevant considerations.

---

[4] Micron, in its reply, complains of BeSang's use of LinkedIn profiles. *See generally* Dkt. No. 67. The Federal Circuit has made clear that use of LinkedIn profiles is permissible provided the information presented on the profile reasonably suggests that the person in question would have relevant and material information. *In re Apple Inc.*, No. 2023-135, 2023 WL 5274629, at *2 (Fed. Cir. Aug. 16, 2023). Such is the case here.
    As to Micron's further complaints about some of the information on the individuals' profiles being inaccurate, under the circumstances, this entitled to little weight. BeSang reasonably relied on this publicly available information, and did so in a situation where it did not have more direct information on this issue.

As a preliminary matter, the Court assigns little weight to Micron's unnamed witnesses in California. Considering these individuals without more information would amount to mere tallying of witnesses available in each forum. A court should "not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). Instead, a court should "qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.*; *Seven Networks, LLC v. Google LLC*, 17-cv-441, 2018 WL 4026760, at *8 (E.D. Tex. Aug. 15, 2018) (the convenience factor analysis is more than "a judicial numbers game" of simply counting the prospective witnesses on each side). Further, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses . . . in places outside both forums" (*In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014)), which is the case here since these California individuals reside neither in this District nor Idaho.

As to Micron's identified prior art witnesses, the Court first notes that Micron has failed to identify these third parties as *willing* witnesses for trial. In the absence of such identification (and corresponding substantiation), it is likely that subpoena power would be required.[5] Because, by Micron's own assertion, these individuals are in California, neither this District nor Idaho have subpoena power over them. Further, the Court finds this to be an unrealistically high number of fact witnesses due to the typical time allotted to each party to present their case at trial. The Court rarely sees third-party fact witnesses being called at all, either live or by a deposition (which could be taken in any district) and Micron has failed to allege any facts indicating that the situation would be any different in Idaho. In short, we find that they are highly unlikely to actually testify at trial, and Micron has offered no argument demonstrating anything to the contrary. *In re Clarke*, 94 F.4th

---

[5] Despite this meaning that this is an issue related to the availability of compulsory process (*See infra* Section III.B.i.b), we address it here for convenience and because neither party addresses it in their briefings on compulsory process.

502, 508 (requiring that the movant's "evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." (emphasis original)).

Turning to Micron's R&D engineers and Dr. Lee, the Court agrees with Micron that it would be more convenient for them to testify in Idaho given its closer location to their homes and places of work. Conversely, the Court finds that it would also be more convenient for the Allen, TX witnesses to testify in this District rather than Idaho for the same reason. The Court further finds that both sets of witnesses have relevant information that is roughly comparable in terms of its importance. Thus, on balance, and taking into account both the number of witnesses and their distance from Marshall, TX and Boise, ID, we find that Plaintiff has the better of this argument.

Accordingly, this factor is neutral at best.

### b. Availability of Compulsory Process

The next private factor is the availability of compulsory process to secure the attendance of unwilling witnesses. Micron's only identified third-party witness in Idaho is retired Micron employee Kirk Prall. Dkt. No. 30 at 11.

In response, BeSang points out that in 2013, it entered into a technology license with SK hynix but that, while hynix has locations in this District, it has none in Idaho. Dkt. No. 65 at 10-11. BeSang contends that "[t]hat agreement is certain to be analyzed by the parties with respect to damages." *Id.* at 11 (citing Dkt. No. 65-15; Dkt. No. Dkt. No. 65-19). BeSang also points to Samsung as being a relevant third party having a location in this district, arguing that they have information regarding noninfringing alternatives and BeSang product development efforts. *Id.* (citing Dkt. No. 65-1 at ¶¶ 101–102).

Next, BeSang asserts that "Micron has twelve authorized distributors that it induces to commit direct infringement. Micron requires them to 'promote vigorously the marketing and distribution' of the accused products to 'realize' their 'maximum sales potential' and the distributors have relevant information about direct infringement, inducement, and damages." *Id.* (citing Dkt. No. 65-31; Dkt. No. 65-20 at 1). BeSang contends that "[a]t least five of these distributors have facilities in Texas." *Id.* (citing Dkt. No. 65-20; Dkt. No. 65-32).

Finally, BeSang points to six individuals: (1) Jon Bullock, a former Micron employee who worked on testing Micron's NAND (*Id.* (citing Dkt. No. 65-21)); (2) John Schreck, another former Micron employee who previously received communications with BeSang prior to this lawsuit regarding BeSang's licensing and patented technology (*Id.* (citing Dkt. No. 65-15; Dkt. No. 65-16)); (3) Derek Dicker, Kartika Sahoo (now at Samsung), and Harish Narendar, who have information regarding Micron's flash technologies including 3D NAND (*Id.* (citing Dkt. No. 65-35)); and (4) Sanjay Banerjee, a member of BeSang's advisory board and who is currently a Professor of Electrical and Computer Engineering at the University of Texas at Austin and has relevant information about BeSang's technology (*Id.* (citing Dkt. No. 65-27)).

As a preliminary matter, the Court assigns limited weight to BeSang's unnamed SK hynix and Samsung witnesses. As with Micron's unnamed California witnesses above, considering these unnamed individuals would amount to mere tallying of witnesses available in each forum.

As to Derek Diecker and Harish Narendar, having reviewed BeSang's evidence, the Court finds that Plaintiff's assertion that they have information related to 3D NAND to be somewhat speculative based on what is actually stated in their respective work histories. *See* Dkt. No. 65-35 at 4, 13. Regardless, the Court agrees that the other witnesses likely do have relevant information

and that this, therefore, weighs against transfer. As to Micron's witness, Mr. Prall, the Court also agrees that this somewhat weighs in favor of transfer.

While BeSang has pointed to a greater number of witnesses, the Court notes that neither party has shown that any of these individuals would actually be unwilling. The availability of compulsory process or subpoena power to secure the attendance of unwilling witnesses "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022) (citations omitted).

Overall then, the parties have pointed to a series of witnesses located in both forums that may have relevant knowledge, but none of whom have been specifically identified as unwilling. Thus, at best, both forums have (possibly unnecessary) subpoena power over multiple potential witnesses. Accordingly, the Court finds this factor to be neutral.

### c. Ease of Access to Sources of Proof

Turning to the third factor, relative ease of access to sources of proof, Micron argues that Idaho is more convenient because the "vast amount of non-witness sources of proof (e.g., documents and physical evidence) are located in Idaho, California, and Singapore." Dkt. No. 30 at 9 (citing Kiehlbauch Declaration at ¶¶ 9-10). As to the evidence not in Idaho (in California and Singapore), Micron argues that "[b]ecause the relevant inquiry under this factor is the '*relative* ease of access, not *absolute* ease of access' to sources of proof" (*Id.* (quoting *In re Radmax*, 720 F.3d at 288)), this evidence is irrelevant since "the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer" (*Id.* (quoting *In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021)).

As to evidence in this District, Micron argues that there are "no relevant sources of proof . . . in this District, or even in Texas, more generally" because, once again, "none of Micron's Texas-based personnel worked on the research, design, development, or manufacturing of the accused products." *Id.* at 9, 10 (citing Kiehlbauch Declaration at ¶¶ 9, 11, 12, 14-17).

In response, BeSang argues that this factor is, at best, neutral because "Micron's Allen campus in the District has volumes of relevant evidence, including technical documentation regarding the accused products, such as the DRAM subcomponents and damages information, and it is a likely source for critical pre-suit knowledge evidence." Dkt. No. 65 at 7.

With respect to technical documents, BeSang asserts that "the Allen facility designs memory components, primarily DRAM, that are included in the accused products and creates documents regarding that memory work." *Id.* (citing Dkt. No. 65-25 at 15:3–16:8, 15:3–16:8). BeSang also asserts that "Micron's Allen campus contains documentation regarding 3DXP, a noninfringing alternative, and DRAM information highly relevant to apportioning the value of the accused SSDs." *Id.* at 8 (citing Dkt. No. 65-4 at 61:19–23).

With respect to pre-suit knowledge evidence, BeSang asserts that its "pre-suit interactions with Micron concerned Micron's DRAM memory" and that "[p]re-suit correspondence involving individuals from BeSang and Micron's Allen facility evidence this." *Id.* (citing Dkt. No. 65-14 at 9; Dkt. No. 65-15; Dkt. No. 65-16). Plaintiff further points to recent public presentations from Micron regarding its DRAM memory which cite BeSang. *Id.* (citing Dkt. No. 65-17 at 5).

Finally, BeSang contests Micron's assertions regarding no Allen personnel being involved with research, design, development, or manufacturing in largely the same fashion as in Section III.B.i.a above. *See id.* at 8-9. Plaintiff also point out that, specifically with respect to Micron's assertion that there are no relevant documents at the Allen facility, despite relying on the

13

Kiehlbauch Declaration for this contention, Mr. Kiehlbauch did not know where much of the relevant data was actually stored, merely that *some* of it was in Boise. *Id.* at 9 (citing Dkt. No. 65-2 at 96:9–12, 96:13–17, 98:16–22, 135:4–139:17).  Micron's replies largely mirror those they made in Section III.B.i.a above. *See* Dkt. No. 30 at 8-10; *see also* Dkt. No. 67 at 3-4.

The Court will not retread the issue of the Allen facility employees having relevant knowledge. While the parties disagree on this point, we have already resolved this factual dispute in BeSang's favor, as we must. *See Vocalife*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2. The only remaining issue is whether there are relevant documents and other such sources of evidence there.

Turning to this issue, based on Plaintiff's arguments, we find that there is a credible showing that the Allen, TX facility houses relevant documents. BeSang's cited deposition testimony creates a sufficient likelihood that evidence related to, for example, DRAM would be found there. While Micron again contests it, this factual dispute is resolved in favor of non-movant BeSang. *See id.*  Accordingly, this weighs against transfer.

Thus, in view of the totality of the Parties' arguments, the Court finds that this factor is neutral. As a preliminary matter, with respect to evidence outside of both this District and Idaho, "[t]he comparison between the transferor and transferee forums is not altered by the presence of . . . documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d at 1340. Accordingly, Micron's alleged evidence in California is entitled to little weight. This is doubly so with the evidence they point to that is in Singapore. *See AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-00514-JRG, 2018 WL 4680557, at *7 (E.D. Tex. Sept. 28, 2018) ("[W]ith documents well outside the United States, the relative ease of access to [the] documents will not substantially change across different districts and is thus neutral."). Micron effectively acknowledges as much.

Turning to the evidence located in in this District and in Idaho, it is apparent from the Parties' briefs that the vast majority of this evidence is electronic. As the Federal Circuit has made clear: while courts should consider "the location of document custodians and [the] location[s] where documents are created and maintained," (*In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)) "[w]hen the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis" (*In re TikTok, Inc.*, 85 F.4th at 358 (cleaned up) (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th at 630)).

Thus, on balance, the Court finds that this factor is neutral.

### d. Other Practical Problems

The final private factor is concerned with other practical problems. The parties do not dispute that this factor is neutral as the case is in its early stages as of the filing of the instant Motion. *See* Dkt. No. 30 at 11-12; *compare* Dkt. No. 65 at 1 n.1.

The Court agrees and finds that this factor is neutral.

### i. Public Factors

### a. Court Congestion

Micron argues that the court congestion factor is neutral because "[P]laintiff 'is not engaged in product competition in the marketplace.'" Dkt. No. 30 at 14 (quoting *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)). In response, BeSang argues that this factor weighs against transfer because the median time-to-trial from filing of civil cases in the District of Idaho is 35.7 months but only 16.7 months in this District. Dkt. No. 65 at 13 (citing Dkt. No. 65-23). Further, BeSang asserts that it is engaged in the market and that there is urgency because "BeSang is a product design company, actively participating in the market—it markets its memory design

15

services, actively seeking clients and product partnerships." *Id.* (citing Dkt. No. 65-34; Dkt. No. 65-36).

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. "[A]s a general matter, 'the district court is better placed' to evaluate its 'docket efficiency.'" *In re TikTok*, 85 F.4th at 363 n.12 (quoting *In re Planned Parenthood*, 52 F.4th at 631). However, this only applies in cases where the plaintiff is engaged in competition in the marketplace. *See In re Google LLC*, 58 F.4th at 1383.

Here, BeSang has asserted that it is involved in the marketplace. In support of this, it has cited to two of its own exhibits, one of which states that BeSang is a "fabless company" (Dkt. No. 65-36 at 2) which outsources the actual manufacture of physical components to third parties. BeSang's evidence indicates that it currently licenses its designs to third parties, and that it plans to eventually enter the marketplace directly by selling its own products that it manufactures itself. *See* Dkt. No. 65-36 at 1 ("We are *preparing* for our own **3D NOR** design and products . . . ." (emphasis added by Court)).

On the whole, the Court finds that BeSang is still a sufficient marketplace participant such that the court congestion factor is entitled to weight. As the Federal Circuit explained in its *Google* decision, as opposed to a non-practicing entity who "is not engaged in product competition in the marketplace," a marketplace participant may be "threatened in the market in a way that . . .add[s] urgency to case resolution and give[s] some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th at 1383. Here, BeSang sufficiently meets this criterion through its non-litigation based licensing and plans to begin selling its own first-party products. While BeSang attempts to substantiate its court congestion argument with statistics very general, the Court finds

that this case is proceeding to trial at the pace set out in the Docket Control Order and would conclude far faster in this Court than in Idaho, even looking solely at the time of filing of the motion.

Accordingly, this factor weighs against transfer.

### b. Local Interest

Micron argues that Idaho has a strong local interest in this case because "[n]ot only is Micron headquartered in Idaho, but research, design, development, and testing of the accused products took place in Idaho." Dkt. No. 30 at 12 (citing Kiehlbuach Declaration at ¶¶ 4, 9, 12-13). Micron further argues that "BeSang's allegations of willful infringement appear to be based on prior interactions between Dr. Lee of BeSang and Kirk Prall and Matt Freeman (who were based in Micron's headquarters in Boise at the time of the alleged interactions and where Mr. Prall still resides), and therefore 'call[] into question the work and reputation of [] individuals residing in or near that district.'" *Id.* at 13 (citing Dkt. No. 1 at ¶¶ 34-37; quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)). Micron further argues that "while Micron's accused products undoubtedly do end up in this District, '[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a "substantial interest" in adjudicating a case locally because some allegedly infringing products found their way into the Texas market.'" *Id.* at 14 (quoting *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).

BeSang responds, arguing that this factor is neutral because "[t]he local interest factor is to account for the connections between a venue and 'the events that gave rise to a suit'" and that the events in question here are "Micron's unauthorized selling of infringing products." Dkt. No. 65 at 12 (quoting *In re Apple*, 979 F.3d at 1344). BeSang further argues that "this is not a case where 'some allegedly infringing products found their way into the Texas market'" but instead is a situation in which "Micron is using this District in distribution: its authorized distributors, like

17

AvNet, which it requires to 'vigorously' sell its products, is located in this District." *Id.* (quoting Dkt. No. 30 at 14; further quoting Dkt. No. 65-20 at 1). As to Micron's research and development argument, BeSang retorts that "while Micron does have a substantial presence in Boise, it cannot show that Boise is exclusively where 'research, design, development, and testing of the accused products took place.' Not one of the six witnesses identified by Micron worked on the circuit design at issue. The record also shows that there are Allen employees who have worked on various portions of the accused products." *Id.* (quoting Dkt. No. 30 at 13).

As BeSang correctly points out, the Fifth Circuit directs courts to consider "the significant connections between a particular venue and the *events* that gave rise to a suit," not "the parties' connections to the venue." *In re Clarke*, 94 F.4th at 511 (emphasis added). In other words, the analysis is concerned with "the interest of *non-party citizens* in adjudicating the case." *Id.* (emphasis in original) (internal citations omitted). Thus, Micron's arguments regarding Kirk Prall and Matt Freeman are irrelevant since, at the relevant times, both of them were working for Micron, they were not *non-party* Idaho citizens.

However, Micron is nonetheless correct that "design and development" are still relevant considerations for this factor, but only insofar as these events—design, development, and the like—give rise to the suit. And with respect to this, as before, BeSang argues that Mr. Kiehlbauch's declaration, on which Micron relies, should not be given any weight because he supposedly was not actually asked to find the person primarily responsible for research, design, and development of accused products, but instead merely found a list of people he "*knew* that were involved in 3D NAND development." Dkt. No. 65 at 2 (citing and quoting Dkt. No. 65-2 at 147:6–9).

While the Court finds that there is research, design, and development that occurred both in Idaho as well as in this District, this factor still weighs somewhat in favor of transfer.

18

    **c. Familiarity of the Forum with the Law that Will Govern the Case, and Conflict of Laws**

The parties do not dispute that these factors are neutral as (1) all claims arise under federal patent law, and as such, all federal courts are equally capable of applying the relevant law in this case; and (2) neither party argues that this case will involve any conflict of law issues. *See* Dkt. No. 30 at 15; *compare* Dkt. No. 65 at 1 n.1, 13.

The Court agrees and finds that these factors are neutral.

### E. CONCLUSION

After reviewing each factor, and accounting for each factor's weight, the Court finds that Micron has failed to carry its burden to show that Idaho is clearly more convenient than this District. Further, Micron has failed to explain how any marginal gains in convenience would be "*significant*," as required by the Fifth Circuit. *In re Clarke, supra*.

Accordingly, the Motion to Transfer is **DENIED**.

**SIGNED this 15th day of July, 2025.**

*[signature: Roy S. Payne]*

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE